UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**FRANKFORT**

| | | |
|---|---|---|
| OWNERS INSURANCE CO., | ) | |
| | ) | Civil Action No. 3:05-11-JMH |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LYONS LUMBER CO., INC., et al., | ) | |
| | ) | |
|     Defendants, | ) | |
| | ) | |
| and | ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| MYKE COPHER, | ) | |
| | ) | |
|     Third-Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GOINS & GOINS INSURANCE | ) | |
| AGENCY, INC., | ) | |
| | ) | |
|     Third-Party Defendant. | ) | |
| | ) | |

**       **       **       **       **

Before the Court is the motion of Defendants, Myke Copher, et al. ("the Cophers"), for summary judgment [Record No. 20], to which Defendant Lyons Lumber Company ("Lyons") joined [Record No. 24], Plaintiff responded in objection [Record No. 25], and the Cophers replied [Record No. 27]. Also before the Court is Plaintiff's cross-motion for summary judgment [Record No. 26]. The Cophers, James E. Smith ("Smith"), and Lyons responded [Record Nos. 28, 29 & 31 respectively], to which Plaintiff replied [Record No. 33].

## I.    Background and Procedural History

The facts are undisputed.  On October 2, 2003, Smith, an employee of Lyons, was operating his privately owned automobile when he struck Claude Mark Copher ("Mr. Copher"), who subsequently died from the accident.  Smith was operating the vehicle as part of his employment with Lyons when the accident occurred.  The administratrix of the decedent's estate and the decedent's children (collectively, "the Cophers") filed a wrongful death action in Franklin Circuit Court against Smith and Lyons in September of 2004.

In March of 2005, Plaintiff, Owners Insurance Company ("Owners"), filed a complaint in this Court against Lyons, Smith, and the Cophers.  Owners is Lyons's insurance carrier and seeks reformation of the insurance contract for Lyons and a declaration that the insurance contract does not provide coverage to Lyons for the accident that caused the death of Mr. Copher.  Owners is not a party to the wrongful death suit pending in state court against Lyons and Smith.  Lyons subsequently filed a counterclaim seeking reformation of the contract and a declaration that the accident is covered.

Goins & Goins Insurance Agency, Inc. ("Goins & Goins") issued commercial insurance policies for Lyons for more than twenty years through its insurance agent, Edward Goins, Jr. ("Goins").  Goins purchased policies for Lyons from Ohio Casualty Insurance Group

("Ohio Casualty") until 2001, when Goins suggested that Lyons switch their coverage to a new company, Owners. When deciding whether to switch companies, Lyons requested and was assured by Goins that Lyons would receive the same coverage from Owners that the company received from Ohio Casualty. When Goins submitted the insurance application to Owners, however, he mistakenly omitted coverage for employee non-owned automobiles and hired automobile liability.[1] The prior insurance policies through Ohio Casualty included both of these coverages.

Goins freely admits that Lyons, through its principal Burt Stevenson ("Stevenson"), requested the same coverage and that Goins promised Stevenson the same. Goins admitted that it was his mistake that the application to Owners did not include the requested coverage. Lyons testified that based on Goins's assurances, he thought he had the same coverage with Owners as he had with Ohio Casualty. The initial policy was issued on January 21, 2002 and was in effect until January 21, 2003. The policy was renewed and covered the period between January 21, 2003 until January 21, 2004.

On the day of the accident, between 1:00 p.m. and 1:30 p.m., Stevenson reported the accident to Goins. Goins later told

---

[1] Hired automobile liability coverage includes liability that the insured incurs from the hiring of someone. The parties did not argue that hired automobile liability applies in the case at hand, but the Cophers and Lyons include this coverage in their reformation claim.

3

Stevenson that Lyons did not have coverage for the accident because of Goins's mistake.  Lyons called Goins back and requested that hired automobile and employee non-owned liability be added to the company's coverage.  Stevenson testified that he did not expect the coverage to be backdated to include the accident, but he wanted the coverage to be added because he had other salesmen out and "didn't want anything else to happen."  (Stevenson Dep. 11:11-12, Aug. 4, 2005.)

Goins testified that he added the coverage at 1:20 p.m. the day of the accident.  The declarations page adding the requested coverage supports Goins's testimony that he thought the addition would be effective at 1:20 p.m.  The endorsement from Owners, however, stated that the coverage was effective at 12:01 a.m., October 2, 2003, the date of the accident.  At the time of the addition, Goins had not reported the accident to Owners.  Owners's Vice President Scott Alan Michael ("Michael") testified that all changes to policies are effective at 12:01 a.m. and that had the company known about the accident, the additions would have been effective the following day, instead of backdating the additions to before the accident.  Michael testified that the company did not receive notice of the accident until sometime in November or December of 2003.

The issue in the current case concerns whether the policy includes coverage for employee non-owned automobile liability.

4

Michael testified that employee non-owned automobile coverage "applies to private passenger autos, as defined in the policy, that the insured does not own or hire while used by any person in [the insured's] business. . . . [T]he coverage extension applies to the insured and executive officers and partners of the corporation." (Michael's Dep. 27:18-25, Aug. 4, 2005.)

The Cophers and Lyons argue that Owners's complaint should be dismissed and the Court should declare that Owners owes coverage to Lyons for the accident because of the mutual mistake of the parties in not including the requested coverage at the time of the initial change to Owners. They seek reformation of the contract and a declaration that the contract includes employee non-owned and hired automobile liability, the coverage mistakenly omitted by Goins.

Owners's motion for summary judgment argues that the Court should not reform the contract to include the omitted coverage because the mistake was unilateral. Owners argues, however, that the contract should be reformed to post-date the additions to be effective after the accident. Owners seeks a declaration that it does not owe coverage to Lyons for the accident because 1) the contract, as reformed, does not include employee non-owned liability and, 2) that even if the contract does include non-owned liability, Owners is not liable for coverage for Smith. Owners also seeks a declaration that it has subrogation rights against Smith.

Prior to filing their motion for summary judgment, the Cophers filed a third-party complaint against Goins & Goins alleging that the third-party defendant is liable for any omission in coverage due to the negligence of their agent, Goins.  The third-party complaint seeks a declaration that Owners has a duty to provide coverage to Lyons and payment to the Cophers and that Owners is bound by the actions and representations of Goins.

After the parties filed the instant motions for summary judgment, Lyons was given leave to file a cross-claim against Goins & Goins.  The cross-claim alleges that Goins & Goins was negligent in failing to provide the requested coverage and seeks a judgment in the amount of damages that Lyons is personally liable for arising from the accident and death of Mr. Copher.

## II.   Standard of Review

A grant of summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

The moving party bears the initial burden to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  This burden is met simply by showing the Court that there is an absence of evidence on a material fact on which the nonmoving party has the ultimate burden of proof at

6

trial. *Id.* at 325. The burden then shifts to the nonmoving party to "come forward with some probative evidence to support its claim." *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). A material fact is one that may affect the outcome of the issue at trial, as determined by substantive law. A genuine dispute exists on a material fact and, thus, summary judgment is improper, if the evidence shows "that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); *Summers v. Leis*, 368 F.3d 881, 885 (6th Cir. 2004).

The judge's function is not to weigh the evidence, but to decide whether there are genuine issues for trial. *Anderson*, 477 U.S. at 249; *Multimedia 2000, Inc. v. Attard*, 374 F.3d 377, 380 (6th Cir. 2004). The evidence should be construed in the light most favorable to the nonmoving party when deciding whether there is enough evidence to overcome summary judgment. *Anderson*, 477 U.S. at 255; *Summers*, 368 F.3d at 885. In the case at hand, both parties moved for summary judgment. When the Court evaluates cross-motions for summary judgment, as is the case here, the Court must analyze each motion and construe facts and inferences in the light most favorable to the nonmoving party. *Lansing Dairy, Inc.,* 39 F.3d at 1347. The parties agree that there are no issues of material fact in dispute and that the matter is appropriate for summary judgment.

7

### III.  Analysis

**A.  Jurisdiction and the Declaratory Judgment Act**

Pursuant to the Declaratory Judgment Act, Owners and Lyons seek declarations of their respective rights arising from the insurance contract between the two.  The Declaratory Judgment Act provides in relevant part:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201(a).  "It is well-settled that the Declaratory Judgment Act cannot serve as an independent basis for federal subject matter jurisdiction." *Mich. So. R.R. Co. v. Branch & St. Joseph Counties Rail Users Ass'n, Inc.*, 287 F.3d 568, 575 (6th Cir. 2002); *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950).  The Court's jurisdiction over the complaint and counterclaim is proper pursuant to 28 U.S.C. § 1332 because the parties are diverse[2] and the amount in controversy exceeds $75,000.00.[3]

The Declaratory Judgment Act requires that there be an actual

---

[2] Owners is incorporated and has its principal place of business in Michigan.  Lyons is incorporated and has its principal place of business in Kentucky.  The remaining defendants, the Cophers and Smith, are also residents of Kentucky.

[3] The insurance contract at issue has a one million dollar limit.

8

controversy.  The Supreme Court has long held that a declaratory action by an insurer against an insured or the injured party seeking a declaration of coverage rights is an actual controversy, even if the injured party has not yet succeeded in judgment against the insured.  *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273-74 (1941).

The defendants do not argue that the primary issue of whether the insurance contract covers the accident is not ripe.  They do argue, however, that the secondary issue of Owners' right to subrogation from Smith is not ripe because Lyons's liability has not been established in state court.  The Sixth Circuit has not spoken directly on this point, but one unpublished district court case within this circuit has held that an insurer's claim for declaration of subrogation rights against a tortfeasor is not ripe until payment to the insured has been made.  *Northfield Ins. Co. v. Isles of June Consulting, LTD*, No. 3:99-1186, 2001 WL 34090035, at *3 (M.D. Tenn. 2001).  The Tenth Circuit has held, on the other hand, that claims for declaration of subrogation rights by insurers are ripe once a legal judgment has been rendered requiring it to make payment to the insured.  *Allendale Mut. Ins. Co. v. Kaiser Eng'rs Div. of Henry J. Kaiser Co.*, 804 F.2d 592 (10th Cir. 1986).  Relying on *Allendale*, a district court in Maine held that a subrogation claim for declaratory relief is ripe when the primary issue of liability among the insured and insurer is litigated in

9

the same action. *Metayer v. PFL Life Ins. Co.,* 30 F. Supp. 2d 57, 60 (D. Me. 1998). The court held that "at the moment [the insurer] is found liable to [the insured] for their medical costs, it has a sufficient interest in the recovery against third parties who allegedly caused the injury to create an actual controversy within the meaning of the Declaratory Judgment Act." *Id*.

The Court finds the reasoning of the Tenth Circuit and Maine cases persuasive in a situation such as this where the Court is asked to decide both the issue of insurance coverage and subrogation rights. Once the Court decides the issue of insurance coverage adverse to the insurance company, the issue of subrogation is ripe for adjudication. Accordingly, the Court finds that both issues are ripe.

Even though the Court has determined that the claims for declarations are ripe and jurisdiction is proper, the Court's exercise of jurisdiction under the Declaratory Judgment Act is discretionary. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287-88 (1995) (stating that the Declaratory Judgment Act "created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants").

In the Sixth Circuit, district courts consider the following five factors to determine whether to exercise jurisdiction over a declaratory judgment action:

> (1) whether the judgment would settle the controversy;

10

> (2)  whether the declaratory judgment action
> would serve a useful purpose in clarifying the
> legal relations at issue;
> (3)  whether the declaratory remedy is being
> used merely for the purpose of "procedural
> fencing" or "to provide an arena for a race
> for res judicata";
> (4)  whether the use of a declaratory action
> would increase the friction between our
> federal and state courts and improperly
> encroach on state jurisdiction; and
> (5)  whether there is an alternative remedy
> that is better or more effective.

*Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968 (6th Cir. 2000).

Declaratory relief is warranted in this case because Owners is not a party to the wrongful death action; a declaration would finally resolve the issue of whether the insurance policy covers the accident and whether Owners has any subrogation rights; and there is no evidence of procedural fencing or that this action will in any way harm the interest of the state in the pending tort suit. Although Kentucky law has a mechanism for intervention through which Owners could have intervened in the tort suit, Ky. R. Civ. P. 24.02, the other factors weigh in favor of exercising the Court's discretion to enter a declaratory judgment.

## B.   Mutual Mistake

The Cophers argue that the representations and promises of Goins bound Owners to include the same coverage as Lyons had with Ohio Casualty in the new policy with Owners.  The Cophers argue that both Goins and Stevenson testified that they thought that the policy would include the same coverage.  As a result, they argue

11

that the policy should be reformed to include coverage for employee non-owned and hired automobile liability because of the mutual mistake of the parties. Owners, on the other hand, argues that the promises of Goins constituted an oral binder, which under Kentucky law expires after ninety days or is superseded by the issuance of the formal insurance contract. Owners also argues that the contract should not be reformed to include coverage for non-owned liability because the mistake of Goins was unilateral. Thus, argues Owners, the only cause of action against Lyons is for vicarious liability of Goins's negligence in failing to obtain the appropriate coverage.

Owners is correct that under Kentucky law, an oral binder is not valid after ninety days, KRS § 304.14-220,[4] and is superceded by the issuance of the permanent insurance contract. *Potomac Ins.*

---

[4] KRS § 304.14-220 provides in pertinent part,

> (1) Binders or other contracts for temporary insurance may be made orally or in writing, and shall be deemed to include all the usual terms of the policy as to which the binder was given together with such applicable endorsements as are designated in the binder, except as superseded by the clear and express terms of the binder.

> (2) No binder shall be valid beyond he issuance of the policy with respect to which it was given, or beyond the ninety (90) days from its effective date, whichever period is the shorter.

*Co. v. Motorist Mut. Ins. Co.*, 598 S.W.2d 461, 463 (Ky. Ct. App. 1979). Kentucky law also provides, however, that a contract for insurance may be reformed if there is mutual mistake. In order for the Court to order reformation, the moving party must show with clear and convincing evidence that a mutual mistake existed. *Flimin's Adm'x v. Metro. Life Ins. Co.,* 75 S.W.2d 207, 209 (Ky. 1934); *Ohio Cas. Ins. Co. v. Murphy*, 28 F. Supp. 252, 254 (W.D. Ky. 1939) (analyzing Kentucky law). "A mutual mistake in respect to reformation is one in which both parties participate, each laboring under the same misconception." *Johnson v. Holbrook*, 302 S.W.2d 608, 611 (Ky. 1957).

Although Owners argues that the only party to the original contract that made a mistake is Goins, Owners admits that Goins had authority to bind Owners. (Pl.'s Cross-Motion for Summ. J. 10, 21.) The uncontradicted testimony shows that not only Goins thought the same coverage was included in the contract with Owners as was included in Lyons' contract with Ohio Casualty, but also Lyons was "laboring under the same misconception." *Id.* In fact, the testimony shows that Lyons changed insurance providers only at the urging of Goins and that Lyons specifically requested the same coverage it had with Ohio Casualty prior to making the switch.

Kentucky courts have found mutual mistake in situations very similar to the case at hand and would find so in this case. *See, e.g., Curry v. Fireman's Fund Ins. Co.*, 784 S.W.2d 176, 177 (Ky.

13

1989) (In an action for bad faith, the court held, "As shown by the evidence, the insurance policy as written contained a mutual mistake. Available coverage requested by appellants was omitted by appellee's agent."); *U.S. Fid. & Guar. Co. v. Breslin*, 49 S.W.2d 1011, 1012 (Ky. 1932) (where agent mistakenly inserted wrong address for covered location in a commercial liability policy, the court reformed the policy because a mutual mistake had occurred and held, "Mr. Breslin had sought and had paid for protection at that point and had labored under the belief that he had procured such protection. His regular insurance agent had procured and delivered the policy for the purpose and under the belief that it covered work at all places in the city."); *Flimin's Adm'x,* 75 S.W.2d at 209 (court reformed insurance contract where the mistake made by the insurance company resulted in the policy containing more coverage than the insured applied for and the court noted, "That equity will reform an insurance policy so as to make it accord with and represent the intention and agreement of the parties is . . . indicated by a 'wilderness' of cases."); *U.S. Fid. & Guar. Co. v. Hunt*, 336 S.W.2d 559, 560 (Ky. 1960) (reforming insurance contract where the wrong property was covered and the court held, "it must be concluded that it was his intention to insure the Byrd Hill dwelling, and that this was the property meant to be insured under the policies written by Hall.").

Owners cites *Investors Heritage Life Insurance Co. v. Farmers*

14

*Bank*, 749 S.W.2d 688 (Ky. Ct. App. 1987), for the proposition that a mistake of an insurance agent is unilateral and does not permit reformation. *Investors Heritage* involved an insurance policy procured to protect a loan taken out by the insured, Mr. Shafer, who died prior to paying off the loan. The Bank and the insurance company were principals and the Bank's employees acted as dual agents for the Bank in procuring the loan and for the insurance company in procuring the insurance. In other words, the Bank was protecting itself in procuring insurance for the loan. The Bank argued that its employee did not fully insure the loan because she mistakenly indicated on the loan application that it was for a monthly reducing loan. The co-signers testified that they co-signed the loan because they were assured by the Bank that the loan was insured.

The court found that the Bank's mistake in obtaining the wrong coverage was unilateral because the insurance company merely "issued the policy ordered and paid for" by the insured. *Id*. at 689-90. The court noted the "general rule that one principal is not liable to the other for the acts of their dual agents" and that "[t]he Bank was the only one able to protect itself under these circumstances." *Id*.

*Investors Heritage* is distinguished from the case at hand because this is not a dual agent case where Goins was procuring insurance to protect its own interests as a principal in the

15

transaction; he was merely an agent for Owners.  As it is also undisputed that Goins had the authority to bind Owners, the parties were all under the mistaken belief that the contract included the same coverage as Lyons had with Ohio Casualty.

Owners's argument that Lyons must proceed with a vicarious liability action against it for the negligence of Goins, instead of seeking reformation through mutual mistake, is not persuasive. Owners cites *Grigsby v. Mountain Valley Insurance Agency, Inc.*, 795 S.W.2d 372 (Ky. 1990), and *Pan-American Life Insurance Co. v. Roethke*, 30 S.W.3d 128 (Ky. 2000), as holding that in cases of agent mistake, the proper cause of action is negligence, not mutual mistake.  The cited cases, although sounding in agent negligence, do not hold that contract reformation through a finding of mutual mistake is foreclosed.

Thus, because it is uncontested that both Goins and Lyons thought the contract with Owners would include the same coverage as the former contract with Ohio Casualty and because it is undisputed that the former contract covered employee non-owned and hired automobile liability, the contract with Owners is reformed to include said coverage from the date of the initial policy change.

Because the Court is reforming the contract to include the requested coverage, it is unnecessary to reform the contract to post-date the additions of the omitted coverage to after the accident.  Although Lyons's and the Cophers' complaints sought a

declaration that the additions were backdated to include the accident, neither party argued this in moving for summary judgment. Accordingly, Owners's motion for reformation of the contract to post-date the additions is denied as moot because the Court reforms the contract to include the omitted coverage from the date of the initial policy change.

## C.    Contract As Reformed Covers the Accident

Owners argues that if the Court reforms the insurance contract to include coverage for employee non-owned liability, the accident is still not covered under the terms of the policy.  The non-ownership liability provision provides,

> a.    Section II - Liability coverage extends to:
>     (1) a private passenger automobile or motorcycle:
>         (a) you do not own or hire;
>         (b) while used by any person in your business; and
>     (2) a commercial automobile (that is not a trailer);
>         (a) you do not own or hire;
>         (b)    while    infrequently    or occasionally used by your employee in your business.
>  b.   This coverage extension applies only to:
>     (1) you; and
>     (2) your executive officers and partners, if you are a corporation or partnership.
>
> . . .
>
> This coverage extension does not apply:
> a.    to any automobile or motorcycle you own or hire;
> b.    to any automobile or motorcycle you operate, if you are an individual; or
> c.    to your executive officers and partners for any

17

automobile they own; and
d.    to any automobile covered by any other provision or extension of the policy.

(Owner's Cross-Motion for Summ. J., Ex. C.)  The definition for "you" and "your" in the policy "means the first named insured shown in the Declarations and if an individual, your spouse who resides in the same household."  (*Id.*, Ex. D.)  Lyons is the named insured on the Declarations page.  (*Id.*, Ex. E.)

Owners argues that the coverage does not extend to Smith because Lyons is the named insured and the policy only covers Lyons or its officers.  Alternatively, Owners argues that the coverage does not extend to Smith even if he was the named insured because the policy excludes vehicles that the insured owns.  In response, Smith argues that he was included as a "you or yours" in the policy.  The Cophers argue that Owners's argument that it does not have a duty to indemnify Smith is irrelevant because Owners has a duty to indemnify Lyons for liability.  The Court agrees.

"The clear and unambiguous words of an insurance contract should be given their plain and ordinary meaning."  *York v. Ky. Farm Bureau Mut. Ins. Co.*, 156 S.W.3d 291, 293 (Ky. 2005). According to the clear terms of the policy, the protection is for Lyons and applies to private vehicles that the insured does not own that are "used by any person in your business."  The coverage applies only to the insured and its officers or partners.  Coverage is excluded for any vehicle that the insured operates or the

18

insured's officers own.  Clearly, Lyons is covered for the accident that occurred in Smith's privately owned vehicle.  Smith is mistaken that the policy covers his liability because only Lyons is the named insured.  However, the policy clearly insures Lyons for any vicarious liability that it may incur as a result of the accident.

**D.   Owners' Subrogation Rights Against Smith**

Owners argues that if the Court determines that Owners is required to provide coverage to Lyons for the accident, then it is entitled to pursue indemnity from Smith due to its subrogation rights in the insurance contract.  Owners points to Section 5 of the policy that provides, "If we make a payment under this policy and the person to or for whom payment is made has a right to recover damages from another, we will be entitled to that right." (*Id.*, Ex. F.)  Owners argues that Lyons can recover for the negligence of Smith for any payments it makes to the Cophers for vicarious liability for the negligence of Smith.  Because Lyons has a right of indemnity against Smith, Owners argues that it has subrogation rights against Smith.  Owners seeks a declaration in accordance with its argument.  In support, Owners cites *Eichberger v. Reid*, 728 S.W.2d 533, 535 (Ky. 1987), that held that a partner has a right to indemnity from another partner for damages the latter caused and for which they were both liable.  In dicta, *Eichberger* also held, "It is generally agreed that there may be

19

indemnity in favor of one who is held responsible solely by imputation of law because of his relation to the actual wrongdoer, as where an employer is vicariously liable for the tort of a servant or an independent contractor." *Id.*

Smith argues that Owners does not cite any authority for its argument that an insurance company has indemnity or subrogation rights in this situation. The Cophers make the same arguments and add that this issue is irrelevant. Neither defendant responds to Owners' argument that the company has subrogation rights conferred on Owners pursuant to the terms of the contract.

Although it is true that Kentucky courts have not specifically held that insurers have a right of subrogation in a situation like this, Kentucky law provides an indemnity right to an employer who is liable to an injured party because of an employee's negligence. *Aetna Life Ins. Co. v. Roper*, 50 S.W.2d 8 (Ky. 1932). *Aetna* held that "a master and servant may be jointly liable to a third party for a negligent act of the servant, the master is entitled to recover over against the servant, if the master was not guilty of any breach of duty." *Id.* at 9. Based on Lyons' right at common law to proceed against Smith if Lyons is held vicariously liable, and the insurance contract's provision that establishes Owners' subrogation right to any of Lyons' claims against Smith, the Court grants Owners' request for a declaration of subrogation rights against Smith. The Cophers' argument that this issue is irrelevant

20

is not persuasive because Owners's complaint sought a declaration of subrogation rights against Smith.  Therefore, the Court declares that Owners has a right of subrogation against Smith if Lyons is found vicariously liable from Smith's negligence in causing the accident.

**E.    Third-Party Complaint and Cross-Claim**

The Cophers filed a third-party complaint against Goins & Goins that sought a declaratory judgment that Owners "has a duty of coverage to Lyons . . . and payment to [the Cophers]."  (Third-Party Compl. 4.)   The third-party complaint also sought a declaration that Owners was bound by the actions of Goins & Goins. After the parties filed motions for summary judgment, Lyons filed a cross-claim against Goins & Goins that sought judgment:

> in an amount to be determined herein to fully compensate this Defendant for any personal liability against claims which are being asserted and for all expense including costs and attorneys fees which have been incurred by this Defendant as a result of the negligence of the Third-Party Defendant, Goins & Goins.

(Cross-Cl. 2.)

The Court does not have independent jurisdiction over the cross-claim and third-party complaint because they do not assert federal claims and the parties are not diverse.[5]   The Court has

---

[5] As stated earlier, Lyons is incorporated and has its principal place of business in Kentucky and Goins & Goins is also incorporated and has its principal place of business in Kentucky. For the third-party complaint, the Cophers are Kentucky residents, as well as Goins & Goins.

supplemental jurisdiction over these claims, pursuant to 28 U.S.C. § 1367(a), but may decline to exercise jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction." *Id.* § 1367(c)(3).

The Court considers "factors such as 'judicial economy, convenience, fairness, and comity,' when deciding whether to decline to exercise supplemental jurisdiction over the remaining state law claim[s]." *Sachs v. City of Detroit*, 257 F. Supp. 2d 903, 916 (E.D. Mich. 2003) (quoting *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254 (6th Cir. 1996)); *Aschinger v. Columbus Showcase Co.*, 934 F.2d 1402, 1412 (6th Cir. 1991) (holding that "only overwhelming interests in judicial economy may allow a district court to properly exercise its discretion and decide a pendent state law claim even if the federal claim has been dismissed before trial.")

In the case at hand, even though it is close to trial, the Court has not expended an extensive amount of judicial resources in familiarizing itself with the cross-claim and third-party complaint as no party has moved for judgment on these claims and there will be no prejudice to the parties by dismissing the claims because the parties are free to file them in state court as the statute of limitations on the claims has been tolled pursuant to § 1367(d). Further, considerations of comity persuade the Court that declining jurisdiction is proper for these Kentucky claims brought by and

22

against Kentucky residents.  Because the cross-motions for summary judgment fully dispose of the claims over which the Court has diversity jurisdiction, the Court declines to exercise supplemental jurisdiction over the remaining cross-claim and third-party complaint.  *Brandenburg v. Housing Auth. of Irvine*, 253 F.3d 891, 900 (6th Cir. 2001) ("[T]he usual course is for the district court to dismiss the state-law claims without prejudice if all federal claims are disposed of on summary judgment.").  Therefore, the cross-claim and third-party complaint are dismissed without prejudice.

### IV.    Conclusion

Accordingly, and for the foregoing reasons, **IT IS ORDERED:**

(1) That Defendants Lyons and the Cophers' motions for summary judgment [Record No. 24 & 20, respectively] be, and the same hereby are, **GRANTED**, and the contract reformed to include coverage for hired automobile and employee non-owned liability from the date of the initial change to Owners.

(A)  That it is declared that Owners owes coverage to Lyons for the accident.

(2) That Plaintiff's cross-motion for summary judgment [Record No. 26] be, and the same hereby is, **DENIED IN PART AND GRANTED IN PART** as follows:

(A)  That Plaintiff's motion for summary judgment is **DENIED** as to Plaintiff's claim for reformation, and the claim is

23

DISMISSED AS MOOT;

(B) That Plaintiff's motion for summary judgment is **DENIED** as to Plaintiff's claim for a declaration that the contract does not include coverage for the accident, and is **DISMISSED WITH PREJUDICE**;

(C) That Plaintiff's motion for summary judgment is **GRANTED** as to Plaintiff's claim for a declaration of a right of subrogation against Smith.

(D) It is declared that Plaintiff has subrogation rights to pursue indemnity against Smith in the event Lyons is found vicariously liable.

(3) That the cross-claim and third-party complaint be, and the same hereby are, **DISMISSED WITHOUT PREJUDICE**.

(4) That all pending motions be, and the same hereby are, **DENIED AS MOOT,** all scheduled proceedings be, and the same hereby are, **CONTINUED GENERALLY,** and the matter be, and the same hereby is, **DISMISSED AND STRICKEN FROM THE ACTIVE DOCKET**.

This the 7th day of April, 2006.



Signed By:

*__Joseph M. Hood__*

United States District Judge

24